Aron Steuer, J.
Plaintiff Anchor Toy Corporation is in the business of making toys from wood and is a wholly owned subsidiary of Transogram Co., Inc., the coplaintiff. There is no distinction between the interests of the two plaintiffs and no point is made as to which would be entitled to recover so that the first named will hereafter be regarded as the party in interest.
The defendants are several insurance companies who issued policies to plaintiff insuring against loss from any interruption of business due to destruction of plaintiff’s plant. The policies are identical. There is no question but that plaintiff’s plant was destroyed by fire and that all of the formalities in regard to notice, claims and the like were duly complied with in all instances. The sole question is the extent of the recovery to be had under the policies.
Before making reference to the language of the policies it is obvious that the items of recovery would consist of the profits that would have been earned if the business had not been interrupted and the expense of maintaining an organization during the interruption. The issues involved in the determination of these questions were approached by counsel with a desire to reach the proper conclusion. Such questions as the estimated amount of business during the period and the percentage of profit were not only of great complexity due, among many other factors, to the means of administering the corporate business, but also were at best matters of opinion. It is therefore greatly to the credit of counsel that many of these questions were resolved by agreement. It is in the best professional tradition that such facts could be stipulated even though widely varying opinions could have been supported by expert testimony. In this way all questions of rate of profit and the like were stipulated and the only question requiring determination is the length of time to which the rates are to be applied. However this question presents numerous issues upon which there is a dearth of judicial authority.
*366 The apposite, portion of the policy reads: “ if the building * * * situate 784 Main Street, Coudersport, Potter County, Pa. * * * be destroyed * * * by the the perils insured against * . * * so as to necessitate a total or partial suspension of business. This company shall be liable under this policy * * * for the actual loss sustained for not exceeding such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the above described property as has been destroyed or damaged ”. Plaintiff’s proof of loss fixes the period at 15 months which limits its claim, though it now asserts that 18 months would be reasonable.
The factory burned to the ground on July 16, 1953. No effort to rebuild it was ever made. Instead plaintiff directed its energies to replacing it by the purchase of another factory. Its efforts along this line were directed towards a plant at Mifflinburg, Pennsylvania, and then ostensibly owned by the Reconstruction Finance Corporation. After going through all required procedures they finally bought the property in January, 1954, only to discover that there were many serious defects in the title which led to cancellation of the contract in April, 1954. No material effort was thereafter made to acquire another plant and such business as plaintiff thereafter conducted (at least during the period under discussion) was done without the use of its own plant.
It follows that the period required to rebuild or replace with due diligence and dispatch is, in this case, entirely theoretical. This of course is not an impediment to recovery. (General Ins. Co. v. Pathfinder Petroleum Co., 145 F. 2d 368; First Inv. Co. v. Vulcan Underwriters, 33 F. 2d 785.) But it does not facilitate calculation of the proper period.
The next issue points the distinction between fact and theory. It is conceded that plaintiff should be allowed a reasonable time in which to construct a factory. From what date should that time begin to run? . Defendant claims from the date of the fire. Plaintiff claims from the date that it was found not to be feasible to replace the factory by the purchase of another. There would doubtless be considerable merit in plaintiff’s contention had it, in fact, started construction after the efforts to acquire a new plant proved abortive. In that event the delay in the commencement of construction would be a reasonable one. But where rebuilding was not in fact contemplated a theoretical delay for alternative measures is not tolerable. The many powerful decisions as to the interpretation of policies *367 against the insurer which can be marshalled are of no avail. It is indisputable that the policy period is that of actual interruption. Where it is sought to terminate this period by acquiring a replacement, and by no other measure, it could as cogently be argued that the actual interruption terminated with the failure of the fruitless efforts to acquire the Mifflinburg plant.
The conclusion is that the correct period is that which would be required to replace the Coudersport factory. But even with this determination of this question something more than mere calculation remains for solution. The plant at Coudersport consisted of several small buildings which were at various times incorporated into a single building. It so happened that a detailed description including measurements of this structure was available. It is defendants’ contention that the building to be rebuilt would be an exact duplicate of this structure. The detailed description would reduce the time to be spent on architectural services to a minimum. This premise is however at fault. The rebuilding contemplated by the policy is the replacement that would actually follow after a disaster. It is beyond the bounds of reasonable contemplation to expect that a replacement structure would ignore all progress in the art and slavishly retain any proven disadvantage. It must be the intent of the policy that the new building to be erected would be modern as well. Doubtless if an extraordinary additional time would be required to include improvements or innovations these would not be included. It would follow that an architect’s services and time for their performance would be needed.
The testimony showed that three main operations are involved — architectural services, construction and the installation of machinery. As to all of these there were irreconcilable differences of opinion among the experts called. It would serve no purpose except to provide grounds for additional controversy to go into the minutiae of these differences and expound the conclusions reached. As between the respective claims of 6 and 30 weeks for architects’ services, 11 is found to be appropriate, consisting of 1 week for consultation, 6 weeks for drawing plans and specifications, ample for such a simple building, 2 weeks for bidding and 2 weeks for. approval by the authorities. Actual construction would take 22 weeks. Installation of machinery was fixed at 6 weeks, but 1 week of this would coincide with the completion of the building. This totals 38 weeks. This is the time it would take to replace the structure providing the building was put up by the experts in the court *368 room. But buildings seldom are. In the field it snows, and men fall off girders, and the wrong size window glass is delivered. An estimate of 8 weeks for these contingencies is not believed to be excessive. To this is to be added 2 weeks, stipulated to be the time required after installation of machinery to supply goods in the same state of manufacture as those on hand at the time of the fire. A total, therefore, of 48 weeks is found.