**BEAUTYTUFT, INC., Jorges Carpet Mills, Inc., and Moccasin Bend Carpet Mills, Inc., Plaintiffs-Appellees,**

v.

**FACTORY INSURANCE ASSOCIATION et al., Defendants-Appellants.**

No. 20075.

United States Court of Appeals, Sixth Circuit.

Sept. 2, 1970.

W. Neil Thomas, Chattanooga, Tenn., and Sam F. Lowe, Jr., Atlanta, Ga., for defendants-appellants; Smith, Co-

hen, Ringel, Kohler, Martin & Lowe, Atlanta, Ga., Bishop, Thomas, Leitner, Mann & Milburn, Chattanooga, Tenn., on brief.

John C. Stophel and Charles J. Gearhiser, Chattanooga, Tenn., for plaintiffs-appellees; Stophel, Caldwell & Heggie Chattanooga, Tenn., on brief.

Before EDWARDS, PECK and Mc-CREE, Circuit Judges.

EDWARDS, Circuit Judge.

Appellants in this case are 58 insurance companies and their agent, the Factory Insurance Association, which insured the three appellee carpet manufacturers against "business interruption" due to fire.

Appellees sued on the insurance policy to recover for business losses which resulted when a fire destroyed the manufacturing facilities then occupied by the three companies on the premises of the Rossville Development Corporation (hereinafter referred to as RDC) at Rossville, Georgia.

The maximum coverage of the policy was $1,188,000, and after a jury trial before the United States District Court for the Eastern District of Tennessee (Southern Division) in Chattanooga, the jury awarded that sum.

Jurisdiction is founded upon diversity of citizenship. 28 U.S.C. § 1332 (1964). Two of the carpet manufacturing companies are Tennessee corporations. None of the insurance companies are Tennessee corporations or have their home offices there. All of them, however, were found to be doing business in Tennessee.

Appellants contend that the verdict is excessive because the District Judge erroneously interpreted the insurance contract in his charge to the jury. Appellants phrase the most substantial issue in this appeal in this fashion:

"Is the period during which insureds are entitled to recover:

"(a) the time *theoretically required,* in the exercise of due diligence,

to rebuild at the R.D.C. site at Rossville, Georgia, premises reasonably equivalent to those occupied by the insured at the time of the fire (as charged by the Court)

or

"(b) such length of time as was *actually required* to replace the leased premises with other leased premises reasonably equivalent to those occupied by the insureds at the time of the fire (as defendants contended)?" (Emphasis in original.)

The problem in this case arises from the fact that appellees did not rebuild the destroyed facilities at the Rossville site but quickly found another location at Fort Oglethorpe, Georgia, and began to reassemble the machinery and equipment necessary to their operations. It is appellants' contention that the length of time for payment of the actual loss should start on June 14, 1967, when the fire occurred, and terminate on October 1, 1967, when it contends appellees were back in full production at the Fort Oglethorpe site.

Appellees contend that the language quoted above applies to rebuilding the destroyed facilities at the original site and that they contracted for the payment of business interruption damages for such period of time as it would theoretically have taken to accomplish this, even if in fact they went back into business earlier at another location. They claim, however, that the direct effects of the fire continued long after October 1, 1967.

We note that there is no dispute as to the time which would have been required to rebuild at the Rossville site. Appellants' brief concedes:

"There was no issue as to the time required to rebuild the premises. Mr. Peerson, Consulting Engineer, testified that the net overall time from the day of the fire to completion of the building where it could be occupied, being a reconstruction of a building similar to Mill Building No.

2 at RDC premises in Rossville, would be twelve and one-half months."

The key contract provisions which we are required to construe are:

"2. Recovery in the event of loss hereunder shall be the ACTUAL LOSS SUSTAINED by the Insured directly resulting from such interruption of business, but not exceeding the reduction in gross earnings less charges and expenses which do not necessarily continue during the interruption of business, *for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such described property as has been damaged or destroyed, commencing with the date of such damage or destruction and not limited by the date of expiration of this Policy.* Due consideration shall be given to the continuation of normal charges and expenses, including payroll expense, to the extent necessary to resume operations of the Insured with the same quality of service which existed immediately preceding the loss.

"3. RESUMPTION OF OPERATIONS.—It is a condition of this insurance that if the Insured could reduce the loss resulting from the interruption of business,

A. by complete or partial resumption of operation of the property herein described, whether damaged or not, or

B. by making use of other property at the location(s) described herein or elsewhere, or

C. by making use of stock (raw, in process or finished) at the location(s) described herein or elsewhere, such reduction shall be taken into account in arriving at the amount of loss hereunder." (Emphasis added.)

The District Judge actually charged that the period for which there could be recovery was the period that:

"'* * * would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such described property as has been damaged or destroyed, commencing with the date of such damage or destruction and not limited by the date of expiration of this policy.'"

He also charged:

"Before arriving, however, at the amount of the insured's loss under the policy, you must take into consideration some further provisions of the policy.

"One such provision is that you must take into account the provision of Paragraph III of the policy regarding the duty of the insured to resume operations and to reduce any recovery under the policy accordingly.

"In this regard let me again read for you Paragraph III. It provides as follows: 'The resumption of operations, it is a condition of this insurance that if the insured could reduce the loss resulting from the interruption of business by complete or partial resumption of operation of the property herein described, whether damaged or not or by making use of other property at the locations described herein or elsewhere, or by making use of stock, either raw, in process or finished at the locations described herein or elsewhere, such reduction shall be taken into account in arriving at the amount of loss hereunder.'

"You will want to accordingly adjust any recovery under the policy in accordance with the provisions of Paragraph III as I have just read them to you."

■ We hold that the District Judge followed the express provisions of the insurance contract. We agree with him that this contract provides a theoretical as opposed to an actual replacement time as the basic time standard for computation of business interruption loss. We also agree that the con-

tract language "such described property" was appellees' "real or personal property * * * [on] the premises of R.D.C., Inc., in Rossville, Walker County, Georgia." Although a substitute plant of potentially equivalent capacity was promptly obtained, appellees' actual losses as shown by the proofs continued beyond that date; and appellees were entitled to reinbursement for such losses for the term of the theoretical replacement period as provided by the contract.

The District Judge's interpretation is consistent with that of both legal and industrial experts on business interruption insurance. *See* K. Withers, Business Interruption Insurance Coverage & Adjustments 18–19 (1957); Clarke, Problem Claims Under Business Interruption Policies, 4 Prac.Law. 64 (May 1958). The only court which appears to have considered this exact problem interpreted the language of a similar policy in the same way. Hawkinson Tread Tire Service Co. v. Indiana Lumbermens Mut. Ins. Co., 362 Mo. 823, 245 S.W.2d 24 (1951).[1] *See also* Grand Pacific Hotel Co. v. Michigan Commercial Ins. Co., 243 Ill. 110, 90 N.E. 244 (1909); Anchor Toy Corp. v. American Eagle Fire Ins. Co., 4 Misc. 2d 364, 155 N.Y.S.2d 600 (Sup.Ct.1956).

Much more to the point, however, is the fact that the plain language of this contract requires the interpretation set forth above. It seems obvious to us that the appellants wanted a standard of potential replacement time which was amenable to computation in advance and which was not subject to vagaries like owner indecision, strikes, or failure of lease negotiations which might affect the actual rebuilding time. And it seems equally obvious to us that Paragraph 3 of the contract as quoted above was designed to give the insurance companies

the benefit of any windfall in speedier replacement time which might actually occur due to "making use of other property." As we have noted, the District Judge gave a full instruction to the jury on Paragraph 3 and we must presume that the jury followed his instruction to take " 'such reduction * * * into account in arriving at the amount of loss. * * *.' "

■ This contract was executed in Georgia and Georgia law applies to its interpretation. In Rothenberg v. Liberty Mutual Ins. Co., 115 Ga.App. 26, 27, 153 S.E.2d 447, 448 (1967), the Georgia Court of Appeals used language which is applicable to our instant case: "We need go no further than the provisions of this policy in making our determination. They are clear and unambiguous."

■ Appellants also claim error in the District Judge's failure to quash service as to the insurance companies and the Factory Insurance Association. Although all of the operative facts of this litigation arose outside the state of Tennessee, they occurred just across the Georgia-Tennessee state line and within the Chattanooga metropolitan area. We agree with the District Judge that all appellants were doing business in Tennessee, were amenable to process there, and that valid service was had personally upon an agent of appellant Factory Insurance Association, which by policy terms was agent for all other appellants. In this regard we agree with and adopt the reasoning of the District Judge in his memorandum opinion of February 26, 1969—particularly the portion which we quote below:

"What effect then should this Court give in this diversity action to the construction placed upon T.C.A. § 20–223 [2] in the *McDaniel* case? As stated

---

1. We note that appellants argue that *Hawkinson* was wrongly decided because appellants claim the court there transposed "or" to "and" in the critical paragraph. We do not, however, agree that this "mistake" was such as to change the result. And the District Judge here did not make it.

2. Section 20–223 provides: "Any unincorporated association or organization, whether resident or nonresident, including nonresident partnerships and nonresident trusts, doing or desiring to do business in this state by performing any of the acts

by the Court in the case of Brimhall v. Simmons, 338 F.2d 702 (C.A.6, 1964), the purpose of a federal court in a diversity action is 'to adopt that construction of this statute which in our best judgment the Supreme Court, of Tennessee would adopt if the same issue were presented to it.' This Court is of the opinion that if the Tennessee Supreme Court were today faced with a construction of T.C.A. § 20–223, the Court would look to the relevant United States Supreme Court decisions, such as Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485, and, in line with Atchison, Topeka & Santa Fe Railway v. Ortiz, 50 Tenn.App. 317, 361 S.W.2d 113 (1962), would place a liberal construction upon a statute providing for service of process upon agents of nonresidents. See also in this regard Southern Machine Co v. Mohasco Industries, Inc., 401 F.2d 374 C.A.6, 1968); 6 Am.Jur.2d, 'Associations' § 56. This Court is of the opinion that the Tennessee Supreme Court would *no longer read into* T.C.A. § 20–223 the limitation that the cause of action must arise within the state. Accordingly, the Court is of the opinion, that *the service of process upon J. A. Chenoweth, the duly appointed Tenneseee resident agent for Factory Insurance Association, was sufficient to subject that Association to the in personam jurisdiction of the Court.*" Beautytuft, Inc. v. Factory Insurance Assoc., 48 F.R.D. 15, 26 (E.D.Tenn.1969).

Appellants assert that the fact that the operative facts of this dispute took place in Georgia renders invalid on due process grounds and as a matter of Tennessee law any attempt of the United States District Court in Tennessee to exercise jurisdiction under the diversity clause.

The United States Supreme Court has provided a definitive answer to the federal due process argument:

"The instant case takes us one step further to a proceeding *in personam* to enforce a cause of action not arising out of the corporation's activities in the state of the forum. Using the tests mentioned above we find no requirement of federal due process that either *prohibits* Ohio from opening its courts to the cause of *action here presented or compels* Ohio to do so." Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 446, 72 S.Ct. 413, 418 (1952). (Emphasis in original.)

And this court has recently rejected a very similar due process attack upon the Tennessee long arm statute in Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374 (6th Cir. 1968).

Appellants' argument concerning jurisdiction over this case under Tennessee law, however, is by no means as easy to answer. Appellants point first to two Tennessee Supreme Court cases of recent date which held that under the facts there involved plaintiffs were not entitled to bring suit in Tennessee courts against a nonresident corporation for a cause of action arising outside of the

---

for which it was formed, shall, before any such acts are performed, appoint an agent in this state upon whom all process may be served, and certify to the clerk of the circuit court of each county in which said association or organization desires to perform any of the acts for which it was organized, the name and address of such process agent. If said unincorporated association or organization shall fail to appoint the process agent pursuant to this section, all process may be served upon the secretary of the state of Tennessee. Upon such service, the secretary of state by registered return-receipt mail shall forward a copy of the process to the last known address of such unincorporated association or organization. Service upon the process agent appointed pursuant to this section or upon the secretary of state, if no process agent is appointed, shall be legal and binding on said association or organization, and any judgment recovered in any action commenced by service of process, as provided in this section, shall be valid and may be collected out of any real or personal property belonging to the association or organization." T.C.A. § 20–223 (1955) (Cum.Supp.1969).

state of Tennessee. Cox v. Fidelity-Phenix Fire Ins. Co., 203 Tenn. 386, 313 S.W. 2d 429 (1958); DeLaney Furniture Co. v. Magnavox Co., Tenn., 435 S.W.2d 828 (1968).

Both of these cases, however, dealt with statutory restrictions [3] placed upon cases where *in personam* jurisdiction was sought to be achieved over foreign corporations through substituted service. In our instant case reliance is not had on substituted service and the statute (T.C.A. § 20–223) under which service was had contains no restrictions to causes of action arising within the state.

As we have noted, the District Court in this case held that personal service had been had upon a fully authorized agent of appellant, Factory Insurance Assoc., and through it upon the appellant insurance companies. The District Judge also noted that the Tennessee statute providing for service upon unincorporated associations, such as the Factory Insurance Assoc., (T.C.A. § 20–223) did not contain language restricting suits to causes of action arising in Tennessee.

Appellants, however, point to a Tennessee Court of Appeals case which construed this very statute and held that it applied to "actions growing out of the conduct of such business within the State." McDaniel v. Textile Workers Union, 36 Tenn.App. 236, 254 S.W.2d 1, 3 (1952).

Leaving aside the question as to whether the above quoted phrase could be held applicable to our instant case, we agree with the District Judge that the Tennessee Supreme Court would now follow a more liberal construction of T.C.A.

§ 20–223 as exemplified in a more recent case from the Tennessee Court of Appeals. Atchison, Topeka & Santa Fe Ry. v. Ortiz, 50 Tenn.App. 317, 361 S.W.2d 113 (1962).

We are inclined to this conclusion by consideration of the long standing policy of Tennessee to allow suits in its courts against both domestic and foreign corporations doing business in Tennessee, even if the cause of action arose outside Tennessee. Patton v. Continental Casualty Co., 119 Tenn. 364, 104 S.W. 305 (1907); Alwood and Greene v. Buffalo Hardwood Lumber Co., 152 Tenn. 544, 279 S.W. 795 (1925).

We recognize, of course, that such suits have now been eliminated by Cox v. Fidelity-Phenix Fire Ins. Co., *supra*, and DeLaney Furniture Co. v. Magnavox Co., *supra*, in cases where jurisdiction depended upon substituted service; but we see no need to extend the holding of *Cox* and *Delaney* to cases like this where actual service has been had.

We note that the Tennesee law considerations which lead us to affirm the District Court's assumption of jurisdiction in this case are met by substantial arguments to the contrary. We find no governing Tennessee Supreme Court decision precisely in point. Under such circumstances the Tennesee statutory provision relating to interpretation of its long arm statute takes on added significance:

"Nothing contained in §§ 20–235—20–240 shall limit or affect the service of process in any other manner now provided by law. This law is in the nature of remedial legislation and it is the legislative intent that it be

---

3. It seems apparent to us that these restrictions were the direct product of a concern about federal due process invalidation of these statutes absent such restriction. *See* Cox v. Fidelity-Phenix Fire Ins. Co., *supra*. It also appears from what we have just quoted from Perkins v. Benguet Consolidated Mining Co., *supra*, that these concerns now seem unfounded. But, of course, the development of the United States Supreme Court's due process reasoning does not directly effect a change in Tennessee statutes or case law.

**1128**

given a liberal construction." T.C.A. § 20–240 (1955) (Cum.Supp.1969).

We feel that the other issues in this case merit less discussion.

As to all of the insurance company defendants, there is clearly the diversity of citizenship required by 28 U.S.C. § 1332 (1964). As to 34 of the defendants the amount claimed is in excess of the $10,000 jurisdictional figure set in § 1332. As to 24 of the defendants, however, the contractual liability is less than $10,000 if the claims are not accumulated, and appellants insist that as to these 24 defendants the District Court had no jurisdiction.

■ As we have noted, this litigation is properly before the court as to 34 defendants without any need to consider the accumulation of the claims. As to the 24 defendants with lesser limits on their liability, the claims arise out of the same transaction and the proofs required (except as to amount of liability) are identical in every respect. Clearly, in the interest of avoiding sheer waste of court time, these claims should be tried together. We believe the District Judge was entirely correct in asserting pendent jurisdiction as to the 24 defendants. Jacobson v. Atlantic City Hospital, 392 F. 2d 149 (3d Cir. 1968). *See also* United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 130, 16 L.Ed.2d 218 (1966); Lewis v. Pennington, 400 F.2d 806 (6th Cir.), cert. denied, 393 U.S. 983, 89 S.Ct. 450, 21 L.Ed.2d 444 (1968).

■ We find no error in the District Court's submission of the issue of appellants' bad faith in refusing to pay this claim under Georgia Code section 56–1206. Ga.Code Ann. § 56–1206 (1960) (Cum.Supp.1969). The evidence was in conflict and the jury found for appellants on this issue.

No other issue of substance being presented and no reversible error appearing, the judgment of the District Court is affirmed.