**BRONX ENTERTAINMENT, LLC
dba Bronx Family Golf
Center, Plaintiff,**

v.

**ST. PAUL'S MERCURY INSURANCE
COMPANY Defendant.**

**No. 01 CIV. 6005(WCC).**

United States District Court,
S.D. New York.

June 4, 2003.

Delbello Donnellan Weingarten, Tartaglia Wise & Wiederkehr, LLP, Attorneys for Plaintiff, White Plains, NY, Christine Moccia, Esq., Of Counsel.

Tell, Chester & Breitbart, LLP, Attorneys for Defendant, New York, NY, Kenneth R. Feit, Esq., Of Counsel.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Bronx Entertainment LLC d/b/a Bronx Entertainment Golf Center ("Bronx Entertainment") brings the instant action against defendant St. Paul Mercury Insurance Co. ("St. Paul") seeking recovery under the terms of an insurance policy (the "Policy") issued by defendant. Defendant now moves for partial summary judgment pursuant to FED. R. CIV. P. 56 on the grounds that plaintiff's second cause of action fails to state a valid claim for relief. For the reasons that follow, defendant's motion is granted.

### BACKGROUND

The following facts are gleaned from the Court's prior Opinion and Order dated February 6, 2002.[1] On May 4, 2000, Bronx Family Golf Centers, Inc. (hereinafter "Family Golf") filed a voluntary Chapter 11 bankruptcy petition. Plaintiff, through its principal Louis R. Cappelli, purchased the assets of Family Golf located at 18–05 East Gun Hill Road, Bronx, New York (the "Golf Center") pursuant to an agreement entered into on or around March 21, 2001 (the "Contract") for the stated purchase price of $520,000. Family Golf sold its rights to the Golf Center as a debtor in bankruptcy pursuant to an order approving the sale issued by the Bankruptcy Court on February 22, 2001.

---

1. Our Opinion and Order denied defendant's motion for a stay of the action pursuant to 11 U.S.C. §§ 362(a)(2), (3).

The Golf Center consists of a golf driving range, a miniature golf course and batting cages. Prior to the transfer, on March 4, 2001, the netting surrounding the driving range was torn from the supporting poles by severe weather. The former manager of Family Golf timely notified Family Golf's insurance agent and a claim notice was sent to St. Paul. Family Golf sought recovery under the Contract for: (1) property damage for the cost of repairing or replacing the netting and (2) the anticipated damages resulting from the inability to operate the driving range.

Family Golf owned an insurance policy issued by defendant covering property damage and loss of business. The policy covered the approximately one hundred properties owned by Family Golf, including the Golf Center. In preparation for the sale of the Golf Center to plaintiff, Family Golf executed an Assignment of Insurance Claim (the "Assignment") on March 19, 2001. The Assignment provides, in relevant part, as follows:

> Bronx Family Golf Centers, Inc. ("Assignor"), for and in consideration of good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, paid to Assignor by Louis Cappelli ("Assignee"), does hereby transfer, assign, set over and quitclaim, without recourse and without representation or warranty of any kind or nature whatsoever, express or implied, all right, title and interest of Assignor in and to that certain claim for insurance proceeds on account of wind damage at premises being sold this date by Assignor to Assignee and located at Gun Hill Road, Bronx, New York, which claim is evidenced by the attached Property Loss Notice, dated March 13, 2001 issued by Mang Craine & Mirabito on behalf of St. Paul Insurance Company.

On April 20, 2001, defendant notified plaintiff that they were denying the insurance claim. Defendant contends that the netting was damaged due to faulty design of the netting suspension system coupled with normal wear and tear. Plaintiff commenced the instant action on July 2, 2001 seeking recovery for the replacement cost of the netting, business disruption losses and fines issued by the City of New York.

## DISCUSSION

### I. *Summary Judgment Standard*

Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ticali v. Roman Catholic Diocese of Brooklyn,* 41 F.Supp.2d 249, 254 (E.D.N.Y. 1999). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ticali,* 41 F.Supp.2d at 254. In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See Ticali,* 41 F.Supp.2d at 255. To defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court's role at this stage of the litigation is

not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir.1994).

## II. *Assignee/Assignor Rights*

Defendant argues that as a "stranger" to the St. Paul Policy, plaintiff has no enforceable rights, except as assignee, and only to the extent that it is able to show that Assignor Family Golf had a loss covered by the Policy. (Def. Reply Mem. Supp. Summ. J. at 8.) We agree. It is clear law that an assignee steps into the shoes of the assignor and gains only that to which the assignor is entitled. *See Septembertide Publ'g, B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 681–82 (2d Cir.1989), citing *Int'l Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.*, 36 N.Y.2d 121, 365 N.Y.S.2d 808, 325 N.E.2d 137 (1975) ("It is elementary ancient law that an assignee never stands in any better position than his assignor. He is subject to all equities and burdens which attach to the property assigned because he receives no more ... than his assignor."). An assignee is in no better or worse position than the assignor. Consequently, "an assignee of a claim takes with it whatever limitations it had in the hands of the assignor." *Caribbean S.S. Co., S.A. v. Sonmez Denizcilik Ve Ticaret*, 598 F.2d 1264 (2d Cir.1979).

Defendant seeks to dismiss plaintiff's second cause of action which alleges:

> As a result of the aforesaid damage to the Driving Range, Plaintiff has been unable to operate its business. Plaintiff is nevertheless obligated to MTA under the licensing agreement for the yearly sum of $500,000. By reason of the foregoing, Plaintiff has been and will be damaged in an amount equal to at least $8,000,000 plus interest.

(Complt.¶ 21, 22.)

Based on the fundamental tenet of assignment law discussed above, we conclude that plaintiff's second cause of action fails to state a claim as a matter of law, to the extent plaintiff asserts its own business losses. Under the Policy, the named insured is "Family Golf Centers, Inc., and any and all subsidiaries in which Family Golf Centers, Inc. has a controlling interest." (Def.Mem.Supp.Summ. J., Ex. F.) Family Golf forwarded a claim notice to defendant seeking compensation under the following two provisions of the Policy:

> **Other property.**
>
> For loss of, or loss from damage to other property, we'll figure your loss to be either:
>
> ● the cost of repairing the property;
>
> ● the cost of replacing the property with that of a similar kind and quality; or
>
> ● the actual cash value of the property on the day the loss was discovered.
>
> **Blanket Earnings And Expense Coverage**
>
> We'll pay your actual loss of earnings as well as extra expenses that result from the necessary suspension of your operations during the period of restoration caused by direct physical loss or damage to property at an insured location.

(*Id.*)

Family Golf assigned this claim to plaintiff in connection with the sale of the Golf Center. Thus plaintiff became an assignee of the insurance claim, taking the claim subject to whatever limitations it had in the hands of Family Golf, the assignor. The Blanket Earnings And Expense Coverage provision limited Family Golf's business interruption losses to those incurred during the suspension of its operations resulting from the wind damage. After about March 21, 2001, when Family Golf sold the Golf Center to plaintiff, it no longer experienced business losses as a result of the wind damage. *See B A Properties, Inc. v. Aetna Cas. & Surety Co.*, 221 F.Supp.2d 592, 598 (D.Vi.2002) (finding

that plaintiff could no longer show the actual losses sustained required under a business interruption coverage because its sale of a hotel to a third party reduced to zero the amount of continuing business losses it experienced as a result of a hurricane). Pursuant to the Policy therefore, Family Golf could only maintain a claim for those business losses sustained before its sale of the Golf Center to plaintiff. Plaintiff as an assignee of the insurance claim, "standing in the shoes" of Family Golf can exercise only the rights it inherited from the assignor. Consequently, plaintiff can maintain a claim for only the business losses Family Golf sustained and cannot assert a claim for its own losses. *See 17 Williston on Contracts* § 49:128 (4th ed.2000) (assignee of an insurance policy does not sue in his or her own right but makes only a derivative claim standing in the shoes of the assignor); *Misic v. Bldg. Serv. Employees Health and Welfare Trust,* 789 F.2d 1374, 1378 (9th Cir.1986) (assignee stands in the shoes of the assignor and may raise only those claims that the insured-assignor could raise in a direct action).

Although both parties cite case law in support of their respective positions, we find the case cited by defendant, *Holt v. Fid. Phoenix Fire Ins. Co.,* 273 A.D. 166, 76 N.Y.S.2d 398 (N.Y.App.Div.1948), to be most apposite. There an action was brought to recover under a business interruption insurance rider attached to a fire policy issued to the owner of a motion picture theater, Berinstein Enterprises. *Id.* Pursuant to this rider the insurance company agreed that if the building was damaged or destroyed by fire, it would be liable for those losses the owner sustained during the period necessary to repair the premises. On March 1, 1946, a fire occurred, suspending the operation of the theater indefinitely. *Id.* at 399. Following the fire, Berinstein Enterprises filed proof of loss for and was paid damages to cover its payroll under the business interruption rider from March 1st to March 11th.[2] On March 11th, title to the premises was transferred to the plaintiff, who also received an assignment of all the seller's right, title and interest in the policy in question. *Id.* Thereafter suit was brought to recover for the loss which the plaintiff alleged he suffered after March 11th. The court in holding that the plaintiff could not maintain an action in his own right reasoned that:

> The obligation under the rider in question was to reimburse the William Berinstein Enterprises for the loss which it sustained, arising by reason of its loss of profits, etc., because of an interruption of its business to be measured by its business experience before the loss and of its probable experience thereafter. The plaintiff was no party to this policy and any assignment to him was void.[3] . . . What this action amounts to is an attempt by a stranger to a policy of insurance to collect for loss of profits, etc., arising out of a business which had not come into existence until eleven days after the fire, and after the named insured, to whom the defendant had issued its policy had ceased to operate the business covered and had transferred the title, ownership and control of the premises to plaintiff.

*Id.*

Likewise, in the instant case, plaintiff is seeking to collect business interruption damages arising out of a business which

---

**2.** Since the business was operating at a loss, no loss of profits was claimed.

**3.** The court noted however that if the business interruption claim had not been paid by the insurance company, Berinstein Enterprises would have had an accrued claim for its loss which could have been assigned to plaintiff.

did not come into existence until 17 days after the wind damage, and after Family Golf, the named insured, to whom defendant had issued its policy had ceased to operate the business covered and had transferred the title, ownership and control of the premises to plaintiff. Therefore, plaintiff cannot assert a claim for losses *it* suffered. Of course plaintiff may maintain an action for Family Golf's losses that accrued as of the date of the assignment. However, plaintiff is proceeding on the theory that it is also entitled to those business losses which had yet to occur at the time of the assignment. This plaintiff cannot do because it would, in effect amount to an assignment of the entire policy to which defendant did not consent.[4] Therefore plaintiff's second cause of action, to the extent that it alleges losses it suffered after the assignment, must be dismissed.

It may appear that St. Paul is getting a windfall as a result of the sale of the business because if Family Golf had continued as the owner, it would have been entitled to be compensated by St. Paul for its business interruption losses during any additional period required for restoration of the netting. However, plaintiff bought the Golf Center with full knowledge that the golf range was out of operation until the netting could be restored and this was undoubtedly taken into account in negotiating the purchase price. Thus St. Paul's benefit presumably comes at the expense of Family Golf and not of plaintiff and allowing plaintiff to recover on its business interruption claim would give the windfall to it instead.

## CONCLUSION

For the reasons stated above, defendant's motion for partial summary judgment, dismissing plaintiff's second cause of action for alleged loss of revenue is granted.

SO ORDERED.

---

4. The terms of the St. Paul policy provide in relevant part as follows: "Neither you nor anyone else covered under this policy can assign or turn over your interest without a written consent attached to the policy." (Def.Mem.Supp.Summ. J., Ex. F.)